Good morning, Your Honor. Alisa Soano-Peterson for the Petitioner. Phillips. Petitioner has asserted in her opening brief that her Fourth Amendment claim is meritorious and that trial counsel was ineffective for the search of her premises. And also, at a minimum, the district court should have allowed Petitioner an evidentiary hearing because she had a culpable claim for relief and she did not receive a fair hearing in the matter. And Petitioner had raised her Sixth Amendment claim in her Alzheimer's, that she was unable to speak, that she was unable to take care of herself. And this definitely raised the possibility that she did not have the capacity to voluntarily consent to the search. And obviously, under those circumstances, if trial counsel had even done minimal investigation into the matter, he would have realized that there was the possibility of a Fourth Amendment claim. And also, there was the issue of whether the search was within any scope of consent, even if there had been a voluntary consent. Let's assume all that's true and there's some procedural problems that make it difficult for us even to review what the state courts did with the IAC claim because it wasn't developed. But let's assume that counsel should have done what you say. Why isn't there, why isn't this a case in which there would have been inevitable disclosure, inevitable, that there eventually would have been a valid search warrant, even assuming that the mother was incapable of giving consent? Because I believe almost all the evidence was discovered after the search of the body, after they went into the backyard. But the evidence at the time of the search was that they knew there was somebody missing they were looking for. They had tips that that person had been murdered, and they had already looked in the backyard, and they had found that the earth was disturbed. Now, wouldn't that lead to, ultimately, to their looking at that backyard? Isn't there probable cause to look at the backyard? Having seen that the earth was disturbed, the person was missing? I don't believe so. I mean, certainly people work in their backyard. Just because somebody's backyard appears to have been worked on doesn't mean that there's a body buried in it. It doesn't mean that, but when you hear there's somebody missing, and you have a tip that the body's in the backyard, and you find that the earth has been recently disturbed in that backyard. Well, I don't think just a mere anonymous tip is enough. Wouldn't you eventually, even if the person didn't... Well, I think that, you know, certainly questionable whether, you know, there would be that, you know, eventual determination. But the point is, really, that this is an ineffective assistance claim, and that Consell did not raise these issues. Obviously, it would have been much clearer if he had. Judge Vogel's question assumes that you're over the point of the merits of the ineffectiveness, that he was ineffective, but that there's no prejudice if the body would have been discovered anyway. Well, I think that, you know, that's certainly questionable. It's Petitioner's position that the body may not have been found, that there would not have been enough evidence, and it was only due to the voluntary consent. Would the body still be there undiscovered? It's certainly possible, because Petitioner said that her father or stepfather had been sighted, and there was some sort of anonymous tip. There's pretty bizarre facts, though. If I'm a police officer and I get this frantic call saying my father's missing, and then there's an anonymous tip saying there's a body that's buried in the backyard, and you see the disturbed dirt in the backyard at the same time as the tip, and then the person who just called you says, no, my father's not missing anymore, I mean, it's certainly enough to raise suspicions. I mean, to think that they would have just forgotten about it after that doesn't seem reasonable to me. And at some point, it seems to me, they're going to, even if they need to get further investigation, and I'm not even sure that they did, they could go to a magistrate and get a search warrant. So I'm still having a hard time seeing how ultimately that body wouldn't have been discovered. Well, I think it's speculation to decide that all these things would have happened, because at the time, the reason why they sought a search warrant is after they were poking around in the backyard, and they removed the refrigerator, and then they saw a body that was partially exposed, and then they decided to have a search warrant. So it's just speculation to say that it was inevitable that they. But what do you think would have happened? You know, so the lady said, my father's missing and then called said, oh, no, he's back. And meanwhile, somebody else calls in and says he's been killed. Two other people. Well, I think it was. Just a minute. I'm sorry. You don't think that it's something the police would like to see? Is he really back that they'd ask? Was she going to produce him at some point? How could they not continue this investigation? And look, look. I mean, how long would she get away with saying I found him when he didn't when he was buried in the backyard? I think that that's actually speculation. There are cases where somebody is buried in the backyard and they never find it or they find it, you know, years and years later. All right. Anyway, that's one problem is inevitable discovery. The probably the most difficult problem. Well, like you have a case that would suggest that it would be inappropriate to apply inevitable discovery under these circumstances or a reason. I'm saying it's speculation. Is there any reason that you believe that the inevitable discovery doctrine doesn't apply? Well, Your Honor, you know, if I could submit a letter brief on that, you know, I'd be glad to do that. I don't know. You've had a chance to brief it. They raised the Knicks versus Williams. I think it is in their brief. And so it's an issue. But if you have anything to add on that. Fine. Otherwise, is there anything else you want to say? You have minutes. You might want to save two minutes. I'll reserve the time. Thank you. Good morning. Deputy Attorney General Margaret Maxwell on behalf of the warden. I have two main points here. I have one question for you procedurally before you get to your two main points in your brief. You say that the state court rejected the habeas claim on the merits. It says here, as the district court indicated, the rejection of Phillips ineffective counsel claim by the state court of appeal comprised an adjudication of that federal claim on its merits. Now, as I read the state court opinions, both the trial superior court and the court of appeal on the habeas, they said they were inadequately pleaded and, therefore, rejected them on state procedural grounds. Is there some reason you decided those were decisions on the merits? Well, the court of appeal decision on direct appeal, although it did say that the direct appeal. On the direct appeal, they said this is not the type of issue that can properly be decided on direct appeal. The way to bring up this type of issue of ineffective counsel is on habeas, state habeas. Correct. So they then brought it up on state habeas, and they were then dismissed in both courts because of inadequate pleading, failure to attach affidavits, documents, is what the court said. But you tell us that they were decided on the merits. Well, that's fine. We got rid of all the state procedural objections. Usually we spend all our time worrying about it, and usually the attorney general is telling us why we can't decide the merits of cases. But this time they seem to be telling us that we should decide the merits, even though the state courts never reached it. Well, the position of the attorney general was based on a part of the direct appeal opinion where the court said that they, based on the record, were not convinced that the Mrs. Edwards couldn't voluntarily consent. And that seemed to be addressing the merits of the claim as contained in the state court record. Okay. All right. Well, that answers the question of why you did it. I'm pleased to see you telling us to get to the merits. And so now you had two points, Joanna. Oh, certainly. Counsel, before we leave that, was that claim exhausted then? The IEC claim on habeas, was it exhausted if it didn't go to the Supreme Court? We're talking about two different avenues here. On direct appeal. I'm not talking about direct appeal. Exactly. It went to the California Supreme Court. On habeas corpus, it was not presented to the California Supreme Court. Okay. So that's my question. If it were never presented to the California Supreme Court, is it exhausted? Not in the habeas. Not to the extent of the court of habeas. You said you treat the state, the direct appeal as a determination on the merits of the issue. Well, in this particular case. So what difference does it make if you never filed a state habeas petition? In this case, it really wouldn't matter. And here's the reason why. The habeas petitions did not offer any additional information than what was offered in the direct appeal. The reason. So it was exhausted on direct appeal. Exactly. Okay. And then this petitioner went on to file a habeas because the court of appeal and implicitly the California Supreme Court had told petitioner, if you want to develop the facts of your claim, you need to go through the habeas process. But petitioner did not take advantage of that procedure and provide additional information, such as declarations, such as police reports, any medical records, or something that would substantiate a claim that Mrs. Edwards was not capable of consenting to the search. So what we have here are the only decision that the California Supreme Court reviewed. So if we look at the court of appeals decision on direct appeal, the record it had before it was the record of the trial. And in the trial, the suppression motion was never litigated. And based on the bits of information that can be gleaned from the direct appeal record, the court of appeals rejection of the claim, the claim being voluntary consent, was at least reasonable under the standard that we're applying here. And it's speculation to think that Mrs. Edwards could not have voluntarily consented based on the mere facts that were presented to the California courts. My second point, though, concerns the request for an evidentiary hearing. And here, a request for an evidentiary hearing has to, we first would look to 2254E2. And we would look to see if she developed the facts for claim in state court. Well, the facts that she wants to develop, she wants to go forward further than the state court record now and develop something more. She had an opportunity to do so. She presented a habeas claim, and she failed to take advantage of the opportunity. She wasn't given an opportunity for an evidentiary hearing in the state court. And she didn't request one. And the question is, in the California law, does the – is it necessary for a petitioner who files a state habeas petition alleging ineffective assistance, is it necessary to expressly ask for a hearing, or doesn't the filing constitute a request for a hearing? You must request a hearing if you – if there are reasons that you cannot develop your record. So, for instance, if her situation was, my attorney won't answer my letters and give me an explanation for his reasons, then she would need to say, I haven't been able to get that information, so I need a hearing court so that I can develop it. What California case says that the petitioner must request a hearing? None of them are going to say in every case that you have to request a hearing. There are some that say that – at least some of our cases say you don't have to request a hearing. If the petition itself states a prima facie case for relief, then you're entitled to a hearing or relief, depending on if there are no additional facts. The California cases that explain the procedural rules are Enright-Clark. That's at 5 Cal 4th, I think, 500 something. But you just said that if your petition presents a prima facie case, you're entitled to a hearing. So you don't have to request one. Right. And in this particular case, though, she did not present a prima facie case for relief. Indeed, you know, her – her petitions filed in the state court, and even her petition filed in the federal court only said the court – the trial counsel was ineffective for failing to present a suppression motion. There were no specific facts alleged. She did not make the effort to develop her claim at all. She was living in the household with her mother. Certainly she would be capable of presenting some facts to the state courts in order to state a prima facie case for relief if one were available to her. Here what we don't know is more significant than what we do know. We don't know the extent of counsel's investigation because Petitioner failed to make any allegations about what her counsel may have investigated. Indeed, counsel may have done some investigation  and that perhaps the police would have, as this court noted earlier, inevitably discovered the body. And we don't know counsel's reasons for not passing on the motion. So here in this case, the briefing by the attorney general was that this was resolved on the merits and that the court's decision on this issue is entitled to deference. It was not an unreasonable application of U.S. Supreme Court precedent. And unless the panel has any questions, additional ones, I'll submit. Thank you, Kathy. Your Honor, in the recent case of Earp v. Stokes, this Court said where the Petitioner establishes a colorable claim for relief and has never been afforded a state or federal hearing on this claim, we must remand to the district court for an evidentiary hearing. And in this case, the Petitioner actually had showed a colorable claim because in her direct appeal, she did reference the record showing that there were many witnesses, at least several witnesses who said that the mother had Alzheimer's and was incapable of taking care of herself. And the court on Habeas should have also considered the record, and the record did establish those things. And she should have been afforded an evidentiary hearing in either state court and district court, which didn't happen. Would any of those facts have mattered if the body would have been discovered anyway? Well, it's Petitioner's position that that is speculative as to whether the body really would have been discovered anyway. And if Conso had done some investigation and had filed a Fourth Amendment claim, he could have developed that further, but it didn't happen. And we are speaking of this appeal is in regards to an ineffective assistance claim. So part of it is that Conso should have done investigation into these matters. Well, the reason it's important is because in order to prevail, you have to show that the failure to make the motion would have affected the outcome of the trial, that you would have succeeded in suppressing the evidence. Now, if the evidence would have been discovered anyway, then the suppression motion couldn't succeed. So we have to – if we were to really examine the question of whether there was ineffective assistance, it has to be prejudicial. So you have to determine whether or not the inevitable discovery doctrine would prevent you from winning on that motion. Well, Your Honor, I think the record would reflect that most of the evidence was found, you know, after the fact and the police may not have gotten to that point if they hadn't gone in the backyard. And I have nothing further, Your Honor. Thank you. Thank you. Thank you very much. The case is there. You will be submitted.
judges: Reinhardt, Rawlinson, Fogel